**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
EASTERN DIVISION**

GARY HAMELL-EL,                                                        PETITIONER
Reg. # 21399-044

V.                              NO. 2:17-cv-00019-BSM-JTR

C.V. RIVERA, Warden, FCI-Forrest City                        RESPONDENT

## RECOMMENDED DISPOSITION

The following Recommended Disposition ("Recommendation") has been sent

to United States District Judge Brian S. Miller. You may file written objections to

all or part of this Recommendation. If you do so, those objections must: (1)

specifically explain the factual and/or legal basis for your objection; and (2) be

received by the Clerk of this Court within fourteen (14) days of the entry of this

Recommendation. The failure to timely file objections may result in waiver of the

right to appeal questions of fact.

### I.  Introduction

Pending before the Court is a § 2241 Petition for Writ of Habeas Corpus filed

by Petitioner Gary Hamell-El ("Hamell-El"), who is currently incarcerated at the

Federal Correctional Institution in Forrest City, Arkansas. *Doc. 2*. In his habeas

Petition, he challenges the calculation of his "prior custody credit" by the Bureau of

Prisons ("BOP") for the time he spent in custody on contemporaneous state and

federal charges.[1] To resolve this issue, the Court must traverse the difficult terrain of primary jurisdiction, a complex legal doctrine, which in this case turns on whether the State of Missouri or the United States arrested Hamell-El on January 12, 1989, and thereby acquired primary jurisdiction over him.[2]

## II. Discussion

### A.    Facts Relevant to Determining Hamell-El's Custodial Status on or after January 12, 1989

#### 1. Hamell-El's Prior Criminal History

On December 10, 1975, Hamell-El was convicted of first-degree robbery and sentenced to 25 years' imprisonment in the Missouri Department of Corrections. *State of Missouri v. Hamell*, St. Charles County Circuit Court, Case No. 15301 ("*Hamell-El I*").[3] On July 27, 1984, Hamell-El was paroled from the Missouri Department of Corrections. *Doc. 9-1, p. 13.*

---

[1] The Court has prepared and attached to this Recommended Disposition a document, marked Appendix A, which contains a timeline of the relevant events that took place in *Hamell-El I*, *Hamell-El II*, and *Hamell-El III*.

[2] "As between the state and federal sovereigns, primary jurisdiction over a person is generally determined by which one first obtains custody of, or arrests, the person." *United States v. Cole*, 416 F.3d 894, 897 (8th Cir. 2005). Importantly, after acquiring primary jurisdiction over a prisoner, the sovereign "can only relinquish primary jurisdiction in one of four ways: (1) release on bail, (2) dismissal of charges, (3) parole, or (4) expiration of sentence." *Elwell v. Fisher*, 716 F.3d 477, 481 (8th Cir. 2013) (*quoting Cole*, 416 F.3d at 897). This means that, if state authorities are the first to arrest a person who has pending state *and* federal charges, *the state* acquires primary jurisdiction over that person and thereafter, its primary jurisdiction can only be lost and acquired by the United States (on the pending federal charges) if the state: (1) releases the person on bail; (2) dismisses the state charges against the person; (3) paroles the person after the required time has been served on the state sentence; or (4) all of the person's state sentence expires.

[3] Sentence and Judgment in *Hamell-El I. Doc. 9-1, pp. 16-17.*

2

On September 22, 1988, while Hamell-El was still on state parole, a federal grand jury in the Eastern District of Missouri indicted him for being a felon in possession of a firearm. *U.S. v. Hamell*, E.D. Mo. Case No. 88-245CR ("*Hamell-El II*").[4]  On September 23, 1988, he was arrested by federal law enforcement officers on that charge; transported to federal court for his plea and arraignment; and then released on a secured federal bond.[5]

On October 6, 1988, Hamell-El was arrested by state law enforcement officers on charges of possessing cocaine, and later released on state bond.[6] This arrest constituted a *clear violation* of Hamell-El's state parole in *Hamell-El I* and his federal bond in *Hamell-El II*.

At some point after October 6, 1988, the State of Missouri issued a warrant for Hamell-El's arrest for violating his state parole. The United States Attorney for the Eastern District of Missouri also obtained an arrest warrant based on Hamell-El having also violated the conditions of his federal bond in *Hamell-El II*.

On November 3, 1988, the grand jury for the Eastern District of Missouri indicted Hamell-El on federal drug charges arising from his October 6, 1988 arrest for possessing cocaine.[7] *U.S. v. Hamell*, E.D. Mo. Case No. 88-276CR ("*Hamell-El*

---

[4] Docket Sheet, *Hamell-El II*.
[5] *Id*. After Hamell-El's arrest, the United States acquired primary jurisdiction over him, but, when he was released on a federal bond, it relinquished that jurisdiction.
[6] Similarly, while the State of Missouri acquired primary jurisdiction over Hamell-El after his arrest, it relinquished that jurisdiction when he was released on bond.
[7] *U.S. v. Hamell*, 931 F.2d 466, 467 (8th Cir. 1991).

3

*III*"). It also appears the government obtained a warrant for Hamell-El's arrest on the drug charges contained in the indictment in *Hamell-El III*.

### 2. Hamell-El's Arrest on January 12, 1989

According to Respondent, on January 12, 1989, state law enforcement authorities arrested Hamell-El on the state warrant for violating his parole in *Hamell-El I. If true*, this means the State of Missouri acquired primary jurisdiction over him on that date.

Respondent relies on two uncontroverted documents to establish that *state law enforcement officers* arrested Hamell-El on January 12, 1989:

(1) Hamell-El's Pre-Sentence Report (*Doc. 9-1, pp. 7-9*) in *Hamell-El III*, which states that, after he was arrested on January 12, 1989, the United States Marshal Service ("USMS") used a *writ of habeas corpus ad prosequendum* each time it "borrowed" Hamell-El from state custody for his appearances in federal court on January 13, January 18, and January 19, 1989, and then returned him to state custody later the same day.[8]

---

[8] The USMS is only required to obtain a *writ of habeas corpus ad prosequendum*, to take temporary custody of a state prisoner, *if the prisoner is under the primary jurisdiction of the state*. This means, if federal authorities had arrested Hamell-El on January 12, 1989, he would have been a federal prisoner, under federal primary jurisdiction, and the USMS would *not* have been required to use a *writ of habeas corpus ad prosequendum* to transport him to federal court for his appearances in *Hamell-El II* and *Hamell-El III*. Thus, the USMS obtaining writs to "borrow" Hamell-El from state custody for his appearances in federal court is clear and uncontroverted evidence that, on and after January 12, 1989, the State of Missouri was exercising primary jurisdiction over Hamell-El, who was a "state prisoner."

(2) The USMS "Tracking System Log for Hamell-El" (*Doc. 9-1, pp. 23-25*), which reflects that, each time Hamell-El was "borrowed" from state custody and then "boarded" overnight, the USMS used a *writ of habeas corpus ad prosequendum* to obtain "temporary custody" over him.[9] According to the Tracking Log, the last time the USMS "borrowed" Hamell-El from state custody was February 28, 1989 through February 27, 1990.[10] *Doc. 9-1, p. 24*.

Respondent also has provided the Court with a BOP memorandum, dated October 30, 2001, which states that "Ms. Adams", an employee at the "St. Louis [W]ork [H]ouse", confirmed: (1) Hamell-El initially was arrested by state authorities for violating his state parole in *Hamell-El I*; and (2) the indictments in *Hamell-El II*

---

[9] When a prisoner is under the primary jurisdiction of a state, transferring him to the temporary custody of the USMS, pursuant to a *writ of habeas corpus ad prosequendum*, does *not* affect the state's continuing exercise of "primary jurisdiction" over the prisoner. Rather, the prisoner is deemed to be "borrowed" or "on loan" to federal authorities in connection with the prisoner's federal prosecution. *Elwell*, 716 F. 3d at 482; *Cole*, 416 F.3d at 896-97. Thus, by taking "physical control" over a state prisoner, pursuant to a *writ of habeas corpus ad prosequendum*, the USMS does *not* "terminate" the state's continuing primary jurisdiction over the prisoner. *Elwell*, 716 F.3d at 482.

[10] The almost one year length of this "borrowing" period is not unusual given the need for the USMS to have temporary custody over Hamell-El so that he would be available for his attorney and the court in connection with the criminal proceedings in *Hamell-El II* and *Hamell-El III*. Because the USMS used a *writ of habeas corpus ad prosequendum* to borrow Hamell-El from state custody, the State of Missouri never relinquished its primary jurisdiction over him.

and *Hamell-El III* resulted in "federal detainers" *later* being lodged against him.[11] *Doc. 9-1, p. 11*; *see also Declaration of James Crook, Doc. 9-1, ¶ 4*.

Hamell-El relies on a FBI record from its "Identification Division" as the *sole support* for his claim that federal law enforcement officers—not state law enforcement officers—arrested him on January 12, 1989. [12] *Doc. 2, pp. 20-22*. This FBI record contains only two short entries, without any explanation of what the entries mean. The first entry records the fact that, on January 12, 1989, Hamell-El was arrested for violating his pretrial release in *Hamell-El II*. The second entry records the fact that, on the same date, Hamell-El was arrested for violating his state parole in *Hamell-El I*. On its face, this document is *silent* as to *who* arrested Hamell-El on that date, which is the essential fact necessary to determine which sovereign acquired primary jurisdiction over him. Thus, the FBI record contains *no relevant facts* supporting Hamell-El's position that federal authorities arrested him on January 12, 1989.

---

[11] In his Reply, Hamell-El denies that he was ever held in the "St. Louis Workhouse." *Doc. 10*. However, he provides no documents or other evidence to support that bare assertion. Regardless of *where* the State of Missouri incarcerated him, after his arrest on January 12, 1989, the uncontroverted evidence in the record establishes that state law enforcement officers arrested him on that date, and the State of Missouri acquired primary jurisdiction over him.

[12] It also appears Hamell-El may be relying on an order entered by a United States Magistrate Judge, on January 20, 1989, which revoked Hamell-El's pre-trial bond in *Hamell-El II*. This order states only that "[t]he defendant was re-arrested on January 12, 1989 based upon the second indictment[,]" *without mentioning* if state or federal law enforcement officers made that arrest. *Doc. 10, p. 7*. Thus, the order provides no support for Hamell-El's position that he was arrested by federal law enforcement officers on that date.

In contrast, the uncontroverted documents provided by Respondent clearly establish that state law enforcement officers arrested Hamell-El, on January 12, 1989, for violating his state parole. At the time of his arrest, there unquestionably were outstanding federal arrest warrants issued in *Hamell-El II* and *Hamell-El III*. However, because he was arrested first on the state charge, the federal arrest warrants became the predicate for the USMS lodging detainers against Hamell-El.[13] Accordingly, nothing in the FBI "Identification Division" document supports Hamell-El's erroneous contention that he was arrested first by federal law enforcement officers.

Thus, on January 12, 1989, the State of Missouri acquired "primary jurisdiction" over Hamell-El. This *required* the USMS to use *writs of habeas corpus ad prosequendum* to "temporarily borrow" Hamell-El from state custody each time his appearance was required in federal court or he was otherwise needed by the USMS in connection with the ongoing proceedings in *Hamell-El II* and *Hamell-El III*.[14] The use of those writs is incontrovertible evidence that, on and after January 12, 1989, Hamell-El was a state prisoner under the primary jurisdiction of the State of Missouri.

---

[13] USMS Tracking Log, *Doc. 9-1, p. 24*; Pre-Sentence Report, *Hamell-El III*, *Doc. 9-1, p. 7*; and Declaration of James Crook, *Doc. 9-1, p. 2*.

[14] Pre-Sentence Report, *Hamell-El III*, *Doc. 9-1*, *p. 7*; USMS Tracking Log, *Doc 9-1, p. 24*. As explained previously in footnote 7, when the United States borrows a state prisoner, using a *writ of habeas corpus ad prosequendum*, it in no way affects the state's primary jurisdiction over the prisoner during the time he is temporarily in federal custody.

### 3.  Hamell-El's Convictions and Sentences on the Federal and State Charges

On July 14, 1989, a jury found Hamell-El guilty on the firearm charges in *Hamell-El II*. On October 26, 1989, the trial court imposed a 15-year sentence.[15]

On November 17, 1989, a jury found Hamell-El guilty of conspiracy to distribute cocaine, distributing cocaine, and possession with intent to distribute cocaine in *Hamell-El III*.[16] On February 14, 1990, the trial court imposed a 20-year sentence and specified that it should run consecutive to the 15-year sentence imposed in *Hamell-El II*.[17]

On February 27, 1990 (the final day of the last "borrowing period" during which Hamell-El was in temporary federal custody pursuant to a *writ of habeas corpus ad prosequendum*), the USMS returned Hamell-El to the State of Missouri, which had continuously been exercising "primary jurisdiction" over him since January 12, 1989. In March of 1990, Hamell-El was found guilty of violating his state parole in *Hamell-El I* and returned to the Missouri Department of Corrections.[18]

---

[15] The Eighth Circuit later reversed and remanded Hamell-El's conviction on the firearm charge and ordered a new trial. *U.S. v. Amerson*, 938 F.2d 116 (8th Cir. 1991). In his retrial, Hamell-El was again convicted of the firearm charge, and, on June 12, 1992, he was sentenced to the same 15-year term of confinement imposed two and a half years earlier. *U.S. v. Gary Hamell-El*, E.D. Mo. Case No. 92-23CR, *Doc. 9-1*, pp. 40-42.

[16] Docket Sheet, *Hamell-El III*.

[17] Judgment and Sentence, *Hamell-El III*, Doc. 9-1, *pp. 32-34*.

[18] USMS Tracking Log, *Doc. 9-1, 23-25*; Letter from BOP to Judge Limbaugh (November 15, 2015), *Doc. 9-1, p. 69*.

On September 4, 1990, the State of Missouri paroled Hamell-El, and, finally relinquished its primary jurisdiction over him. The USMS then took custody of Hamell-El, pursuant to the federal detainers lodged against him in *Hamell-El II* and *Hamell-El III*,[19] and the United States acquired primary jurisdiction over him, effective September 4, 1990. Hamell-El was then transported to the BOP to begin serving his federal sentences.[20]

### B.  The BOP's Calculation of Hamell-El's "Prior Custody Credit"

Hamell-El received an aggregate term of imprisonment of thirty-five years in *Hamell-El II* and *Hamell-El III*.[21] In accordance with its general practice, the BOP determined that Hamell-El's sentence commenced on September 4, 1990, the date he was paroled from his state sentence and the United States acquired primary jurisdiction over him.[22]

On January 5, 2016, the BOP granted Hamell-El's request for a *nunc pro tunc* or retroactive designation.[23] This resulted in Hamell-El's sentence in *Hamell-El III*

---

[19] Missouri Department of Corrections Face Sheet, *Doc. 9-1, p. 13*.

[20] USMS Tracking Log, *Doc. 9-1, p. 25*.

[21] On June 12, 1992, Hamell-El received a 15-year sentence in *Hamell-El II* following his retrial. The sentence in *Hamell-El II* was silent as to whether it would run concurrent or consecutive to the 20-year sentence he received in *Hamell-El III. Doc. 9-1, pp. 40-41*. Accordingly, under 18 U.S.C. § 3584, the 15-year sentence in *Hamell-El II* was deemed to run *consecutive* to the 20-year sentence he received, on February 14, 1990, in *Hamell-El III. See* Hamell-El's Inmate Data Sheet, *Doc. 9-1, p. 78*, in which the BOP projects expiration of Hamell-El's sentences to be February 13, 2025.

[22] Letter from BOP to Judge Limbaugh (November 15, 2015), *Doc. 9-1, p. 69*.

[23] The BOP has the authority to make such a "*nunc pro tunc* designation" if it is "consistent with the intent of the federal sentencing court or the goals of the criminal justice system." BOP Program Statement 5160.05, *Doc. 9-1, p. 58*. A *nunc pro tunc* designation has the effect of

commencing on the earlier date of February 14, 1990, the date that sentence was imposed, rather than September 4, 1990. *Doc. 9-1, p. 76*.

Hamell-El argues that, because federal authorities allegedly arrested him on January 12, 1989, the United States acquired primary jurisdiction over him on that date and, thereafter, never relinquished it. Thus, he contends that he is entitled to receive prior custody credit for the time he spent in primary federal jurisdiction from January 12, 1989, through February 13, 1990. This amounts to one year and 33 days of prior custody credit that he claims should be applied to the federal sentence he is now serving in *Hamell-El II*.[24]

The calculation of a federal term of imprisonment is governed by 18 U.S.C. § 3585(a) and (b). Together, these two subparts of the statute determine when a federal sentence "commences" and when a defendant is entitled to credit for time "spent in official detention prior to the date the sentence commences."

---

retroactively making a prisoner's federal sentence commence on an earlier date and run concurrently with any state sentence he also may be under. *Fegans v. Norris*, 506 F.3d 1101, 1103 (8th Cir. 2007).

[24] Hamell-El began serving his 20-year sentence in *Hamell-El III* on September 4, 1990, the day the United States acquired federal primary jurisdiction over him. Under the BOP's subsequent *nunc pro tunc* designation, Hamell-El was deemed to have begun serving that sentence on February 14, 1990. This resulted in him flattening the *Hamell-El III* sentence on February 13, 2010. BOP Program Statement 5880.28, *Doc. 9-1, p. 46* (the BOP "calculates any part of a day in custody serving sentence as a **full day** served on the sentence ... and any part of a day in official detention as a **full day** for [prior custody credit] purposes.") (emphasis in original). On February 14, 2010, Hamell-El began serving the 15-year consecutive sentence imposed in *Hamell-El II*. Thus, it is against the 15-year sentence in *Hamell-El II* that Hamell-El now seeks to have the BOP apply the 1 year and 33 days of prior custody credit.

10

### 1.  Commencement of Hamell-El's Federal Sentence

Under § 3585(a), a defendant's federal sentence "commences" when he "is received in custody awaiting transportation to ... the official detention facility at which the sentence is to be served." A federal sentence cannot commence prior to the date it is pronounced. *See Sisemore v. Outlaw*, 363 Fed. Appx. 424 at 1 (8th Cir. 2010) (*citing Coloma v. Holder*, 445 F.3d 1282 (11th Cir. 2006)). Importantly, *service* of a federal sentence generally commences "when the United States takes *primary jurisdiction* and a prisoner is presented to serve his federal sentence, not when the United States merely takes physical custody of a prisoner who is subject to another sovereign's primary jurisdiction." *Elwell v. Fisher*, 716 F.3d 477, 481 (8th Cir. 2013) (emphasis added).

After the BOP granted Hamell-El's request for a retroactive designation of his sentence in *Hamell-El III* (*Doc. 9-1, p. 76*), that sentence began to run on the date it was imposed, February 14, 1990, rather than the date Hamell-El entered federal primary jurisdiction, on September 4, 1990. By the time Hamell-El requested and the BOP granted this *nunc pro tunc* designation in 2016, he had already flattened his sentence in *Hamell-El III* and was serving the remainder of his 15-year sentence in *Hamell-El II*. Thus, the result of the *nunc pro tunc* designation in *Hamell-El III* meant that Hamell-El began his 15-year sentence in *Hamell-El II* on February 14, 2010, rather than September 4, 2010.

## 2. Prior Custody Credit

In order for Hamell-El to receive credit for the time he claims between January 12, 1989, and February 13, 1990, he must establish that this time qualifies as "prior custody credit" under 18 U.S.C. § 3585(b).  A defendant is entitled to credit on his federal sentence for any time spent in custody *prior to* the date his federal sentence commences *if* the detention: (1) was the "result of the offense for which the [federal] sentence was imposed," or (2) was the result of a "charge for which the defendant was arrested after the commission of the offense for which the [federal] sentence was imposed." 18 U.S.C. § 3585(b). However, this statute goes on to explicitly provide that the time spent in custody can only be credited against the federal sentence *if it has not already been credited against a state sentence*. *Id.*

Here, the BOP determined that Hamell-El was not entitled to any "prior custody credit," for the time he was in state custody, between January 12, 1989, and February 13, 1990, because that time had already been *properly credited* by the State of Missouri against his state sentence in *Hamell-El I*. Respondent has provided a sworn declaration from BOP Supervising Attorney James Crook stating that all prior custody credit beginning January 13, 1989, was applied by the State of Missouri to the sentence in *Hamell-El I. Doc. 9-1*, pp. 1-5. Crook's Declaration is supported by a letter from a Missouri Department of Correction Parole Analyst who states that Hamell-El received *full credit* on his state parole sentence for the entire time the state

exercised primary jurisdiction over him between January 12, 1989, and February 14,

1990:

> ...Mr. Hamell received full credit towards his Missouri
> [parole] sentences, including all time held in county jail;
> all time before and after the Federal detainer was lodged
> [on January 13, 1989]; all time while [in temporary
> custody] on Federal detainer/writs while awaiting
> [federal] sentencing [in *Hamell-El II* and *Hamell-El III*]
> and all time prior to the date the state revocation order was
> issued [in connection with] ... his Missouri state parole
> violation.

*Doc. 9-1*, p. 44. Thus, the State of Missouri *properly credited* Hamell-El's state

parole sentence in *Hamell-El I* with *every day* it exercised primary jurisdiction over

him, from January 12, 1989, through February 13, 1990, *including* the days he was

"temporarily borrowed" by the USMS and held in federal custody in connection with

the pending federal charges in *Hamell-El II* and *Hamell-El III*.

Hamell-El *admits* that these days of prior custody credit were applied by the

State of Missouri on his state sentence for parole violation, but he claims it did so

"erroneously," because during that entire period of time he was under the primary

jurisdiction of the United States.[25] As previously explained, the record before the

---

[25] In the process of exhausting his administrative remedies, before filing this Petition, Hamell-El stated "I am renewing my claim to prior jail credit time, accredited to a state case...I am also requesting that time, wrongly accredited to the state case, from January 12, 1989 to September 3, 1990 be accredited to my Federal Sentence according to the Primary Jurisdiction Doctrine as applied in *Elwell v. Fisher*, 716 F.3d 477 (8th Cir. 2013)." *See Doc. 2, p. 19.*

Court clearly establishes that the State of Missouri: (1) acquired primary jurisdiction over Hamell-El, on January 12, 1989, immediately after his arrest by state authorities; and (2) retained that primary jurisdiction through September 4, 1990, when it released Hamell-El on parole and the United States acquired primary jurisdiction over him. Suffice it to say, there are *no facts* in the record to support Hamell-El's claim that the State of Missouri "wrongly accredited the [one year and 33 days] to the state case." *Doc. 2, p. 19*.

Viewed in the context of the true facts, Hamell-El is arguing that the time the State of Missouri *properly credited* against his parole violation sentence in *Hamell-El I* should *also be credited* against his federal sentences. Because 18 U.S.C. § 3585(b) explicitly *prohibits* prior custody credit being "double" counted, Hamell-El's argument is without merit. *See also United States v. Wilson*, 503 U.S. 329, 337 (1992) (the Supreme Court noted that, in enacting § 3585(b), "Congress made clear that a defendant could not receive a double credit for his detention time"); *Elwell*, 716 F.3d at 484 (§ 3585(b) is an "express bar on double credit" and "is not a source of discretion for the BOP").

For these reasons, the Court concludes that the BOP properly calculated Hamell-El's sentence and did not abuse its discretion in denying him the prior custody credits he now seeks to have applied against his federal sentences. *See Fegans v. Norris*, 506 F.3d 1101, 1105 (2007) (the BOP's decision to deny a *nunc*

14

*pro tunc* designation is reviewed for an "abuse of the agency's substantial discretion").

Finally, in Hamell-El's Reply Brief, he requests the Court to order the BOP to amend or correct its records under the Privacy Act. The Court recommends this request be denied because such a claim must be litigated in a separate civil suit.[26] Furthermore, such a claim is unsupported by the record before the Court and would be futile because the BOP's central file is exempt from the provisions of the Privacy Act.[27]

## III. Conclusion

IT IS THEREFORE RECOMMENDED THAT this 28 U.S.C. § 2241 Petition for a Writ of Habeas Corpus, *Doc. 2*, be DENIED, and that this case be dismissed, with prejudice.

DATED this 6th day of June, 2018.

_____
UNITED STATES MAGISTRATE JUDGE

---

[26] See *Vera v. Outlaw*, No. 2:10CV00094-JMM-JTK, 2010 WL 3718382, at 3 (E.D. Ark. Aug. 24, 2010), *report and recommendation adopted sub nom. Ventura Vera v. Outlaw*, No. 2:10-CV-00094-JMM-JTK, 2010 WL 3724532 (E.D. Ark. Sept. 14, 2010).

[27] 28 C.F.R. § 16.97